# W. H. EDGAR & SON

*vs.*

## THE IMPERIAL ICE CREAM COMPANY.

*Sale of Sugar—Damaged Condition—Responsibility of Vendor—Rejection by Purchaser—Instructions—Second Appeal.*

A telegram from the purchaser of sugar to the vendors, to the effect that some of the sugar had been found "wet and sticky," with a shortage in the average invoice weight per bag, and asking what recourse the purchaser would have if he paid the draft for the price, and whether the vendors would "guarantee weight,. quality and condition," together with a reply telegram from the vendors, that the conditions reported "would indicate damage in transit; sugars sold guaranteed twenty-five Dutch standard in color, and we guarantee weight," did not indicate that the vendors was to be responsible only for short weight and defective color, and did not exclude the question of the purchaser's duty to accept sugar damaged in transit.

pp. 314, 315

It having been decided on a former appeal that the vendor's responsibility for the condition of the sugar did not end when it was placed in course of transportation from New York, but continued until delivery to the purchaser, at the points of destination, the fact that the condition in which some of the sugar was found was due to damage in transit would not debar the purchaser from declining to accept the sugar thus rendered unfit for its use.

p. 315

That the purchaser was, by reason of information as to other shipments of sugar by the same vendors, apprehensive of a damaged condition of the sugar purchased by him, would not enable the jury to find that he knew of such condition before paying for the sugar.

p. 315

No opportunity for inspection of the sugar purchased having existed prior to delivery, that the purchaser segregated that portion complained of, and notified the vendors that they would

be expected to examine each bag as to color and dampness, and to make prompt settlement "covering all sugar off-color and damp," was sufficient evidence for the jury of rejection of such portion of the sugar. pp. 315, 316

If particular bags of sugar were rejected for sufficient cause, the purchaser was entitled to recover what he had paid for such portion of the sugar, and was not restricted to the measure of recovery applicable when there has been an acceptance of goods not conforming to the contract. p. 316

After a retrial, at which a prayer was offered and granted in reliance upon the approval which it had received on appeal from the judgment on the first trial, it would require very convincing reasons to justify a reversal on a second appeal by reason of the grant of such prayer. p. 317

A notification by the purchaser to the vendors that part of the sugar was damaged and that the latter were expected to dispose thereof and to make prompt settlement, *held,* under the circumstances, to be equivalent to rejection of the damaged sugar. p. 317

An instruction leaving to the jury a question as to what was meant by "Java white sugar," the descriptive terms used in the contract of sale, was to be construed as referring to the significance of that phrase as used in such contract, the evidence as to the meaning of such phrase having been directed to the time of the execution of the contract. pp. 317, 318

It having been testified that the bags of sugar which plaintiff purchaser declined to accept had become wet from external causes, with the result that considerable portions of their contents had absorbed moisture so as to affect the quality of the sugar, and the lumpy condition to which the purchaser objected having been proved to be due to the hardening of some of the sugar as it became dry after the excessive absorption of moisture, *held* that a prayer authorizing a recovery by plaintiff for sugar found by the jury to be "not dry and free running on account of being damp, wet or lumpy" was not objectionable as being in effect an instruction that damp or lumpy sugar is not "dry and free running." p. 318

The rejection of certain bags of sugar by the purchaser *held* to have been intended to apply to the entire contents of the bags as specified shipment units, the sugar in good condition in such bags being so mingled with the damaged sugar that a separation of the contents according to quality was not attempted or suggested.                              p. 319

On an issue as to defects in sugar purchased, it was proper to admit evidence that plaintiff purchaser asked for an opportunity to inspect the sugar before it left New York, and that defendant vendors replied that the sugar was then in transit, and that the contract made no provision for inspection before shipment.                              p. 319

*Decided January 10th, 1923.*

Appeal from the Circuit Court for Washington County (WAGAMAN, J.).

Action by the Imperial Ice Cream Company against W. H. Edgar & Son, trading as Edgar Sugar House. From a judgment for plaintiff, defendants appeal. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*William L. Rawls,* with whom were *Ferdinand Williams* and *Robert H. McCauley* on the brief, for the appellants.

*Carl G. Mullin* and *J. Cleveland Grice,* for the appellee.

URNER, J., delivered the opinion of the Court.

In the opinion delivered by CHIEF JUDGE BOYD on a former appeal in this case, and reported in 139 Md. 630, the issues involved in the litigation are fully and clearly discussed, and will not now be restated except in so far as may be necessary for the disposition of the new question presented on the pending appeal.

The suit is for the partial recovery of money paid by the plaintiff for Java white sugar purchased from the defendant and which upon inspection after delivery was found, according to the plaintiff's proof, to be deficient in quantity and, as to a portion, unmerchantable in quality. It is admitted that there was a shortage, to the extent claimed by the plaintiff, in the weight of the sugar for which he had paid, and that a small part of it was properly refused as being "off-color," but the dispute is over the claim that a much larger proportion of it was delivered in a condition which justified its rejection. The present appeal is from a judgment for the plaintiff for $8,563.30, resulting from the new trial for which the case was remanded after a reversal on the former appeal of a judgment in his favor for the same amount.

Thirty exceptions were reserved at the retrial of the case. The most important of the questions thus raised is whether there was in fact and law a rejection of the sugar alleged to be of inferior quality, entitling the plaintiff to recover the full amount of the contract price paid for it, or whether, upon the theory that he accepted it in the first instance, he is limited to recovery of damages, as for a breach of warranty, to the amount of the difference between the contract price and the actual value of the sugar at the time it was received.

There are 133 bags of sugar in controversy, and they were included in two carload shipments, of 183 bags each, delivered to the plaintiff at Wheeling, West Virginia, and Cumberland, Maryland. It had been agreed that the defendants' obligation as to delivery should be completed upon presentation of bills of lading properly endorsed and with sight drafts attached. By reason of the fact that the bills of lading had not been endorsed by the defendants, when they were first presented to the plaintiff, there was an interval of some days between the payment of the drafts and the proper endorsement of the bills of lading, by which the plaintiff was enabled to open the cars and remove and inspect their contents. It was then discovered, as the plaintiff's witnesses testify, that five of the bags contained sugar which was below grade in color,

in fifteen of them there was "lumpy" sugar, and in 113 of them a considerable proportion of the sugar was in a damp or wet condition. These bags of sugar were segregated in the plaintiff's warehouses, and the defendants were notified that they would be expected to make disposition of the part of the shipment regarded, and thus treated, as unacceptable.

Prior to the payment of the drafts attached to the bills of lading the plaintiff had telegraphed the defendants that some of the Java white sugar shipped by them to other consignees, had been found to be "wet and sticky," and there was a short-age in the average invoice weight per bag, and asking: "What recourse have we if we lift draft? Will you guarantee weight, quality and condition?" The reply telegram of the defendants stated that the conditions reported "would indi-cate damage in transit; sugars sold guaranteed twenty-five Dutch Standard in color, and we guarantee weight." In view of this exchange of messages the defendants' tenth prayer, which was refused, asked for an instruction to the effect that if the plaintiff "before accepting and paying the drafts for the purchase price for the sugar in question was informed by the defendant that the sale was made on a color standard and that the defendant was responsible to plaintiff only for short weight and for non-compliance in color in No. 25 Dutch Standard, and that after receiving such information the plaintiff accepted and paid said drafts for the purchase price for said sugar and shall further find that the plaintiff knew of the alleged damaged condition of part of the sugar before he accepted and paid said drafts, then, except as to five bags of sugar admitted to be below 25 Dutch Standard in color, the plaintiff is limited in his recovery for such al-leged condition to the difference between the value of the said sugar at the time it was received and the contract price of said sugar."

Upon several grounds the refusal of this prayer may be approved. There was no evidence as to the receipt of any information by the plaintiff, before the drafts were paid, that

the defendants would be responsible *only* for short weight
and defective color. The telegram of the defendants, by
which this hypothesis of the prayer is thought to be supported, does not, in our opinion, have that effect. The suggestion in the telegram that the condition discovered in the
other shipments "would indicate damage in transit," did not
preclude a legitimate question in regard to the plaintiff's
obligation to accept sugar thus damaged, if any such was
found in the consignments to it which had not yet been delivered and inspected. As decided on the former appeal, the
responsibility of the defendants for the condition of the sugar
did not end when it was placed in course of transportation
from New York, but continued until delivery to the plaintiff,
at the points of destination, by presentation of the bills of
lading properly endorsed. If the condition in which some of
the sugar was found, on delivery and inspection, was due to
damage in transit, that fact would not debar the plaintiff
from declining to accept the sugar thus rendered unfit for its
use. In our examination of the record we have discovered
no evidence upon which the jury could find, as proposed by
this prayer, that, before the drafts for the sugar were paid,
the plaintiff knew that part of the sugar consigned to it was
damaged. It appears from the proof in the case that the
plaintiff was apprehensive of such a condition because of
information he had received in regard to other shipments of
Java white sugar by the defendants, but this would not have
enabled the jury to find that the plaintiff *knew* of the damaged
condition of the sugar here in question before the payment
of the drafts. The prayer is further objectionable because it
disregards evidence tending to prove a rejection of the 133
bags of sugar which are the subject of this litigation. As
already stated, they were segregated from those accepted, and
the defendants were notified by telegram that their representative would be expected to "examine each bag as to color and
dampness, you to give disposition and make prompt settlement covering all sugar off-color and damp." No oppor-

tunity for inspection having existed prior to delivery, the prompt action taken immediately thereafter by the plaintiff, in reference to the examination of the sugar and the separate storage of the part considered unmerchantable, and the notification to the defendant from which we have just quoted, would seem to support the theory of rejection which the prayer excludes. If the particular bags of sugar in dispute were rejected for sufficient cause, the plaintiff was entitled to recover the amount he had paid for that portion of the consignments, and would not be restricted to the measure of recovery defined by the defendants' tenth prayer as applicable when there has been an acceptance of goods not conforming to the contract of purchase. The refusal of the prayer was proper.

It was strongly contended that the granting of the plaintiff's third prayer was improper because, after instructing the jury that the delivery of the sugar to the plaintiff was at the time of the endorsement to it of the bills of lading, the prayer concluded as follows: "and if they should further find that at the time the bills of lading were endorsed over to the plaintiff the sugar in question was not merchantable and that the plaintiff notified the defendants of said fact within a reasonable time after receipt of the sugar and an opportunity to inspect the same, then the verdict must be for the plaintiff for the sugar not merchantable at the time the bills of lading were endorsed over to the plaintiff." This is said to be erroneous in permitting a verdict for the full contract price of the damaged sugar without requiring the jury to find that it had been rejected as a condition of recovery to that extent. It is argued that a notification to the defendants of the imperfect condition of the sugar did not constitute a rejection, but left the plaintiff in the position of having accepted the sugar subject to the right to recover from the defendants only the difference betwen its contract price and its actual value. A prayer in the identical terms of the one now being considered was offered and granted at the first trial of the case and was approved by this Court on the former appeal. It may not

have been then subjected to the particular criticism now being urged. But such an objection, if valid, was equally available at that time, as the two records present the same material facts. After a re-trial at which the prayer now questioned on the ground stated was re-offered and re-granted in reliance upon the approval it had received from this Court, it would require very convincing reasons to justify a reversal of the prior ruling. It does not seem to us that such reasons have been presented. There is no contradiction as to the facts relating to the plaintiff's receipt, inspection and disposition of the sugar alleged to be unmarketable, and to the notification to which the prayer refers. It is undisputed in the testimony that the defendants were notified not simply that a part of the sugar was damaged, but that they were expected to dispose of it and make prompt settlement. The prayer under consideration apparently proceeds upon the theory that such a notification was equivalent to a rejection, under the special circumstances of the case, and there appears to be sufficient reason for that conclusion. The Court would not be justified in awarding a third trial of the case because of this instruction.

By the granting of the plaintiff's fifth prayer the jury were instructed that if Java white sugar, the descriptive terms used in the contract, "meant a dry, free running sugar of a color equal to or better than 25 Dutch Standard," and if "some of the sugar delivered by the defendant to the plaintiff was not dry, free-running sugar and some of it was not of a color equal to or better than 25 Dutch Standard, then the plaintiff is entitled to recover for the sugar which the jury may find from the evidence was not dry and free-running on account of being damp, wet or lumpy," or which was not of the requisite color, "provided that the jury further find from the evidence that within a reasonable time after the payment of the drafts in question and receipt of said sugar the plaintiff or some one in its behalf notified the defendant of its refusal to accept said sugar." Objection is made to this prayer on two grounds. First, it is said that the inquiry it

authorizes as to whether "Java white sugar meant a dry, free-running sugar" should have been directed to the time when the contract of sale was executed. As we understand the prayer, it directs the inquiry to that period. When it asked the jury to consider what "Java white sugar meant" it would naturally be construed as referring to the significance of that phrase as used in the agreement on which the suit is based. The testimony as to the commercial meaning of "Java white sugar" was carefully directed to the time when the parties entered into the contract. The language of the prayer did not tend to confuse the minds of the jury on this point. It is further objected that this prayer, after inviting the jury to determine from the evidence whether some of the sugar purchased was not "dry, free-running sugar," author- izes a recovery for sugar found by the jury to be "not dry and free-running on account of being damp, wet or lumpy," and this is said to be in effect an instruction that damp or lumpy sugar is not "dry and free-running" although there is proof in the case that all sugar contains a certain percentage of moisture and that the mere presence of lumps does not impair its quality. It was testified that the 133 bags of sugar which the plaintiff declined to accept had become wet from external causes, with the result that considerable por- tions of their contents had absorbed moisture to such an ex- tent that the quality of the sugar had deteriorated. The lumpy condition to which the plaintiff objected was proved to be due to the hardening of some of the sugar as it became dry after the excessive absorption of moisture. It was the intent of the prayer that as to sugar found to be dry and free- running the plaintiff was not entitled to recover, but that he should be awarded damages for sugar not answering to that description because of the condition to which alone the evi- dence referred. In our opinion the prayer is not objection- able.

All of the defendants' eleven prayers were granted except the tenth, which we have already discussed, and the first, which we will now consider. The purpose of that prayer was

to have the case withdrawn from the jury except as to the five bags of sugar admitted to be inferior in color. It was held on the previous appeal that a prayer having such a purpose was properly refused. No sufficient reason has been suggested for a different ruling at this time. The objection, now specially urged, that there is no evidence of a rejection of the sugar to which the suit relates, has already been considered and overruled. While the rejected bags contained some sugar in good condition, it was so mingled with the damaged sugar that a separation of the contents according to quality does not appear to have been attempted by the plaintiff or to have been suggested on behalf of the defendants, whose inspectors examined the sugar after delivery and segregated the bags in which the damp, lumpy and off-color sugar was found. It was evidently intended that the rejection should apply to the entire contents of the bags as specified shipment units for which the contract between the parties provided. The proposed instruction could not properly have been granted on the ground that the proof of rejection was legally insufficient.

The twenty-nine exceptions relating to the admissibility of evidence will be ruled upon briefly. The first, second, third, nineteenth, twentieth, twenty-first, twenty-second twenty-third, twenty-fourth and twenty-fifth exceptions were concerned with evidence which was admitted in careful observance of limitations stated in the opinion delivered by CHIEF JUDGE BOYD on the former appeal.

By the fourth and fifth exceptions the defendants questioned the right of the plaintiff to prove that it had asked for, but did not have, an opportunity to inspect the sugar in New York before it was shipped to Wheeling and Cumberland. The reply of the defendants to the request was that the sugar was then in transit and the contract made no provision for inspection before shipment. In admitting such proof of the plaintiff's effort, and of the reason for its inability, to inspect the sugar before actual delivery, we think the trial court committed no error.

The sixth, seventh, and fourteenth exceptions raised questions in regard to the qualifications of sugar brokers who were allowed to testify as to the trade meaning of "Java white sugar," and the twenty-sixth disputed the competency of a sugar chemist to describe its qualities. The rulings on these exceptions were correct.

The twelfth, sixteenth and seventeenth exceptions are immaterial and are not pressed.

The telegrams and letters to which the twenty-seventh, twenty-eighth and twenty-ninth exceptions relate were pertinent to the issues and were properly admitted.

In reference to the five remaining exceptions it is sufficient to state our conclusion that we do not find in the rulings thereby questioned any adequate ground upon which to reverse the judgment and remand the case for a third trial.

*Judgment affirmed, with costs.*